Chris L. FRITZINGER *v.* Donald BEENE, City of Conway, and Don Zimmerman, Chief Executive Officer of the Arkansas Municipal League's Municipal Vehicle Program

CA 02-197 97 S.W.3d 440

Court of Appeals of Arkansas
Division II
Opinion delivered February 5, 2003

*David A. Hodges*, for appellant.

*M. Keith Wren*, for appellees.

Olly Neal, Judge. Appellant sued the three appellees in a negligence action. He appeals from the Faulkner County Circuit Court's order dismissing appellees Donald Beene and the Arkansas Municipal League's Municipal Vehicle Program ("MVP") and the reduction of a judgment against the remaining appellee, the city of Conway, from $92,500 to $25,000. We affirm.

This case arose out of an accident that occurred when appellant's motorcycle struck a stop sign in the city of Conway. Appellant asserted that the accident was caused by appellee Donald Beene's negligence in the operation of a city-owned garbage truck. Appellant subsequently sued Beene and the city, who claimed to be immune from suit and suggested that appellant sue the city's liability insurer. Appellant, believing the city's insurer to

be the MVP, sued Don Zimmerman, the MVP administrator.[1] However, the MVP sought dismissal on the ground that it was not subject to a direct action.

The circuit judge dismissed Beene and the MVP, but he allowed the case to proceed to trial against the city of Conway. A jury awarded appellant $92,500 against the city, and judgment was entered thereon. Thirty days later, the city moved, pursuant to Ark. R. Civ. P. 60(a), to modify the judgment amount to $25,000, which it contended was its maximum liability under Arkansas's tort immunity statutes. The trial court granted the motion and reduced the judgment accordingly. This appeal followed.

 We first consider whether the trial court was correct in its use of Ark. R. Civ. P. 60(a) to reduce the judgment amount. The underlying basis for the reduction lies in our municipal tort-immunity law, which provides that municipalities and their employees who are performing official acts are immune from liability and suit in tort, except to the extent that they are covered by liability insurance. Ark. Code Ann. § 21-9-301 (Supp. 2001); *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985). Municipalities are required to carry motor vehicle liability insurance in the minimum amounts prescribed by the Motor Vehicle Safety Responsibility Act, which, in the case of bodily injury to one person, is $25,000. *See* Ark. Code Ann. § 21-9-303(a) (Repl. 1996) and § 27-19-713(b)(2) (Supp. 2001). Thus, in an accident involving injury to one person, the maximum combined liability for a city and its employees is $25,000. Ark. Code Ann. § 21-9-303(b); *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000). On this basis, the city asked the trial court, pursuant to Rule 60(a), to reduce the $92,500 judgment against it to $25,000.

 Arkansas Rule of Civil Procedure 60(a) reads:

> To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order or

---

[1] The MVP is a self-funded program which, within specified limits, pays all sums a participating city or a city employee must legally pay as damages because of bodily injury, death, or property damage involving a covered municipal vehicle.

decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk.

Appellant argues that Rule 60(a) was not applicable in this case because it should only be used to correct the record, not to do something which, in retrospect, ought to have been done. *See Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983). However, Rule 60(a), as modified in 2000, allows the trial court not only to correct errors or mistakes but to "prevent the miscarriage of justice." The term "miscarriage of justice" is not limited to clerical errors. *See Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.3d 76 (1999); David Newbern and John Watkins, *Arkansas Civil Practice and Procedure* § 26-12 at 391, n. 3 (3d ed. 2002). A trial court has broad authority to correct non-clerical errors or mistakes so as to prevent the miscarriage of justice. *See Lord v. Mazzanti, supra.*

■ Had the trial court allowed a $92,500 verdict against the city of Conway to stand, a miscarriage of justice would have occurred in this case. The law clearly provides that the city's maximum liability is $25,000. Ark. Code Ann. § 21-9-303(b) (Repl. 1996). Thus, the trial court's use of Rule 60(a) to conform the verdict to the limits of the law was not an abuse of discretion. *See Pettigrew v. Grand Rent-A-Car*, 154 Cal. App. 3d 204, 201 Cal. Rptr. 125 (1984) (holding that the trial court properly used a proceeding similar to our Rule 60 to reduce a $150,000 jury verdict to the statutorily imposed maximum of $15,000).

■ ■ Appellant also contends that, instead of using Rule 60 to modify the judgment, the city should have employed Ark. R. Civ. P. 59, which governs new trials. He suggests that the city used Rule 60 to circumvent the ten-day filing deadline imposed by Rule 59(b), and he cites *United Southern Assurance Co. v. Beard*, 320 Ark. 115, 894 S.W.2d 948 (1995), for the proposition that Rule 60 may not be used to breathe new life into an otherwise defunct new trial motion. We do not view this situation as one in which a litigant employed Rule 60 as a ruse to avoid the time constraints of Rule 59(b). Rule 60 is in fact the more logical rule to use under the circumstances of this case. The city did not want a new trial, nor did it assert any error on the part of the trial court or the jury. It simply wanted the judgment reduced to comply

with the law. Further, in *Thompson v. Sanford*, 281 Ark. 365, 663 S.W.2d 932 (1984), the supreme court held that, if a jury enters a verdict against an immune entity in excess of that allowed by section 21-9-303, the proper procedure is for the trial court to reduce the award after the jury has entered its verdict. Although *Thompson* does not specify what method or rule is to be used to accomplish the reduction (and we believe the wisest course is to seek reduction immediately upon the jury announcing the verdict), we find nothing in Rule 60 that would necessarily prevent it being employed for this purpose.

■ As for appellant's contention that the city waived its tort immunity by not raising it as a defense during trial, we disagree. The city asserted immunity as a defense from the time it filed its first pleading. Further, the city could not have known that the jury would render a verdict in excess of $25,000 until after the trial was completed. Thus, any motions made during trial would have been premature. *See Thompson v. Sanford, supra* (recognizing that the proper time for a trial court to reduce an excess award in these circumstances is after the verdict has been rendered).

■ Having decided that the trial court properly reduced the judgment to $25,000, we turn now to appellant's argument that the trial court erred in dismissing Beene and the MVP from the lawsuit. We fail to see how appellant was prejudiced by Beene's dismissal. By receiving an award of $25,000 in damages, appellant has obtained the maximum amount available against the city and Beene combined. Ark. Code Ann. § 21-9-303(b) (Repl. 1996). Although appellant claims that Beene could be held personally liable in this situation, we disagree. Appellant cites several cases in which liability was imposed on a *state* employee for negligent operation of a motor vehicle. *E.g., Grimmett v. Digby*, 267 Ark. 192, 589 S.W.2d 579 (1979); *Kelly v. State*, 265 Ark. 337, 578 S.W.2d 566 (1979). However, those cases were rendered ineffective when the legislature passed Ark. Code Ann. § 19-10-305(a) (Supp. 2001), granting state employees a similar immunity to that already enjoyed by municipal employees under section 21-9-301. At the time of the accident giving rise to the suit in this case, the *municipal* tort-immunity statute was in full force and effect. Therefore, Beene could not be held personally liable for a

negligent act committed in the performance of his official duties. *See City of Little Rock v. Weber,* 298 Ark. 382, 767 S.W.2d 529 (1989); *Autry v. Lawrence, supra.*

■ Regarding the MVP's dismissal, we likewise see no prejudice to appellant. The MVP's obligation to pay the city's damages was limited by its own terms to $25,000. Thus, appellant has not shown how the outcome of his case would have been affected by the MVP remaining in the lawsuit. But, in any event, we believe the MVP was properly dismissed from the action.

Appellant named the MVP as a defendant based on the following portion of section 21-9-303(c):

> Any person who suffers injury or damage to person or property caused by a motor vehicle operated by an employee, agent, or volunteer of a local government covered by this section *shall have a direct cause of action against the insurer* if insured, or the governmental entity if uninsured, *or the trustee or chief administrative officer of any self-insured or self-insurance pool.* Any judgment against a trustee or administrator of a self-insurance pool shall be paid from pool assets up to the maximum limit of liability as herein provided.

(Emphasis added.) The MVP argued successfully below that a direct action against it was not allowed by the above-quoted statute because it was not an "insurer." We need not go into the details of whether the MVP was an insurer or other entity mentioned in the above-quoted statute because, even if it was, it was not subject to a direct action in this case.

■ Reading section 21-9-303(c) out of context could lead a tort victim to believe that he was entitled to sue a municipality's insurer directly. However, such a reading would be contrary to the intent of Act 47 of the Third Extraordinary Session of 1989, from which the statute is derived, and other subsequent acts. Act 47 was passed to clarify that, if a municipality carries insurance in excess of the $25,000 limits required by law, then the maximum liability of the insurer would be the actual policy limits. Thus, the focus of the act is the direct and independent liability of an insurer who provides coverage greater than the $25,000 limit. The relevant part of the act, which is not divided into subsections (b) and

(c) as is section 21-9-303, therefore should be interpreted to allow a direct action against an insurer or pool administrator only when the insurer or pool administrator may be liable for an amount in excess of the $25,000.

Such an interpretation is harmonious with the intent of a later act, Act 292 of 1993. There, the legislature amended the tort-immunity statutes for the express purpose of prohibiting direct actions against insurers. An earlier act, Act 542 of 1991, had provided that municipalities were immune from damages *and from suit*. Act 292 amended the law to clarify that this did not mean that a direct action could be had against the municipality's insurer.

In light of the foregoing analysis, we conclude that the trial court did not err in dismissing the MVP from the lawsuit. Although the trial court did not apply the same line of reasoning we do on this issue today, the trial court may be affirmed if it is correct for any reason. *Reed v. Smith Steel, Inc.*, 77 Ark. App. 110, 78 S.W.3d 118 (2002).

Finally, we reach appellant's argument that section 21-9-303(b), which caps the municipality's liability at $25,000, is unconstitutional because it "gives no incentive to a governmental entity to fairly settle a case, since their liability is capped" and it "mandates maximum liability for a municipality without setting any guidelines or consequences for settlement of valid claims." The constitutional provision that Fritzinger contends has been violated is Ark. Const. art. 5, § 32, which reads in pertinent part: "[N]o law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property. . . ."

There is a strong presumption of constitutionality attendant to every legislative enactment, and all doubt concerning it must be resolved in favor of constitutionality. *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). If it is possible for the courts to construe an act so that it will meet the test of constitutionality, we not only may, but should and will do so. *Id.* Further, the party challenging a statute has the burden of proving it unconstitutional. *Id.*

We note at the outset that the trial court did not rule on the constitutionality of section 21-9-303. To preserve an argument for appeal, even a constitutional one, the appellant must obtain a ruling below. *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002). Even if the issue in question was actually argued to the trial court, a ruling must still be obtained to preserve the issue on appeal. *See Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997). Also, appellant does not explain how he was prejudiced by the city's failure to settle the claim, especially in light of the fact that he has been awarded a judgment against the city in the maximum amount allowed by law. No reversal can be obtained where no prejudice can be determined. *See generally Williams v. State*, 327 Ark. 97, 938 S.W.2d 547 (1997); *McCoy Farms, Inc. v. J & M McKee*, 263 Ark. 20, 563 S.W.2d 409 (1978), *cert. denied*, 439 U.S. 862 (1978). Moreover, appellant cites no authority nor does he make any convincing argument for the proposition that the Arkansas Constitution requires municipalities or their insurers to have guidelines for settlement of claims. Where no citation to authority or convincing argument is offered, we may decline to address the issue on appeal. *See City of Van Buren v. Smith*, 345 Ark. 313, 46 S.W.3d 527 (2001).[2]

For the foregoing reasons, we affirm the orders appealed from.

Affirmed.

GLADWIN and ROAF, JJ., agree.

---

[2] If the merits were reached, however, we would decline to hold section 21-9-303 unconstitutional on the basis urged by appellant. Our supreme court has held that the legislature may constitutionally limit a citizen's right to recover damages from a municipality. *See Thompson v. Sanford, supra*. Also, in *White v. City of Newport*, 326 Ark. 667, 933 S.W.2d 800 (1996), the supreme court specifically held that the concept of municipal tort immunity did not violate article 5, section 32.